UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x

NICOLE JOHNSON,

Plaintiff,

-against-

ALLIED UNIVERSAL SECURITY SERVICES and FELIX RICHARDSON,

Defendants.

---------------------------------------------------------------------x

Case No. 18 Civ. 2119

**COMPLAINT WITH JURY DEMAND**

Nicole Johnson ("Plaintiff"), by and through her attorneys, Emery Celli Brinckerhoff & Abady LLP, as and for her Complaint against Defendants Allied Universal Security Services ("Allied") and Felix Richardson ("Richardson"), alleges as follows:

## PRELIMINARY STATEMENT

1. This case is about a security guard who endured months of sexual harassment at work and suffered retaliation—and ultimately termination—when she complained.

2. Plaintiff was employed as a security professional by Allied at the World Trade Center in lower Manhattan between January 2017 and September 2017. During that period, she was repeatedly sexually harassed. Her repeated complaints about a supervisor telling her she needed a "real man" to slap her around, choke her, throw her against a wall, and have sex with her were ignored, and the harassment escalated from vile and degrading comments to groping.

3. When Plaintiff complained, instead of commencing an appropriate investigation and disciplining the offenders, Allied made sure that all of Plaintiff's co-workers knew about her human resources complaints and facilitated retaliation against her.

4. Ultimately, Plaintiff was terminated for pretextual reasons in retaliation for her complaints about sexual harassment. The harassment and mistreatment suffered by Plaintiff was part of a pattern or practice of employment discrimination carried out by Allied over many years at various job sites.

**JURISDICTION AND VENUE**

5. This Court has original jurisdiction over Plaintiff's federal law claims under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. The Court has supplemental jurisdiction over Plaintiff' New York State and New York City law claims under 28 U.S.C. § 1367(a).

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

**JURY DEMAND**

7. Plaintiff demands a trial by jury in this action.

**PARTIES**

8. Plaintiff Nicole Johnson is a natural person who was employed by Allied from January 2017 to September 2017.

9. Defendant Allied Universal Security Services is a Delaware corporation that maintains corporate headquarters at 229 West 36th Street, New York, New York 10018 and 199 Water Street, New York, New York 10038. Allied Universal Security Services was formed in or around August 2016 as the result of a merger between Defendant Allied Barton Security Services, LLC and Universal Services of America. On information and belief, Allied Universal Security Services is the parent company of and/or successor-in-interest to Allied Barton Security Services LLC. Allied Universal Security Services contracts with the Port Authority to provide security services at World Trade Center.

## FACTS

***Background***

10. Plaintiff was hired by Allied as a security professional on or about January 23, 2017.

11. Plaintiff worked as a security guard at the World Trade Center in lower Manhattan, under the auspices of Allied's contract with the Port Authority of New York and New Jersey.

12. For the first several months of her employment with Allied, Plaintiff was assigned to work in and around the "Oculus," the transportation hub at the World Trade Center.

***Plaintiff Endures a Campaign of Harassment***

13. Beginning early in her time as an Allied employee, Plaintiff was subjected to a campaign of sexual harassment and a hostile work environment created and facilitated by supervisors and human resources workers at Allied.

14. Within weeks after Plaintiff started at Allied, a Lead Tour Supervisor ("LTS") named Felix Richardson began to take an inappropriate interest in her. LTS Richardson became jealous when he noticed that Plaintiff was socializing with a male co-worker. He ridiculed Plaintiff and repeatedly said she could "do better." Richardson would frequently follow Plaintiff to her post under the pretext of supervising her work, only to linger for an hour or more and harass her about her social relationship with her male coworker.

15. In or around the spring of 2017, Plaintiff made her first complaint about Richardson's inappropriate conduct to Linda Whitaker of Allied human resources. She informed Ms. Whitaker that Richardson was acting inappropriately and expressing jealousy about her socializing with a male co-worker.

16. Ms. Whitaker told Plaintiff, in sum and substance: "This is what happens at World Trade." Ms. Whitaker advised Plaintiff that the best way to deal with inappropriate conduct at the workplace was to "call out" the offending co-workers publicly. Ms. Whitaker told Plaintiff that other Allied employees had previously spread rumors that she (Ms. Whitaker) was sleeping with a co-worker, and Ms. Whitaker said she "handled" the situation by "calling people out at roll call."

17. Plaintiff told Ms. Whitaker that she was not comfortable dealing with her supervisor's inappropriate conduct in this way. Ms. Whitaker told Plaintiff that she would talk to Richardson on Plaintiff's behalf.

18. Instead of addressing Plaintiff's complaint, on information and belief, Ms. Whitaker disclosed the substance of Plaintiff's concerns to other Allied employees at the World Trade Center.

19. Richardson escalated his campaign of harassment against Plaintiff.

20. Richardson often made demeaning and threatening sexual comments to Plaintiff. For example, Richardson would tell Plaintiff that she was acting like a "bitch" when she did not reciprocate his advances. He told Plaintiff that she needed a man to slap her around and choke her, and that she needed a real man to throw her against a wall and have sex with her. He commented on Plaintiff's lips and remarked on his interest in how Plaintiff might "suck cock with them." He accused Plaintiff in vulgar language of having sexual relationships with co-workers. Richardson would sometimes lick his lips suggestively while making demeaning sexual comments to Plaintiff at work.

21. When Plaintiff ultimately made it clear that she would not be receptive to Richardson's advances, he retaliated. For example, after she began complaining about sexual

harassment, Plaintiff was transferred from working inside the Oculus to working outdoors guarding construction sites at the World Trade Center, a less desirable assignment.

22. Richardson also retaliated by freezing Plaintiff out, even when it meant neglecting his responsibilities as her supervisor. For example, on one occasion, Richardson refused to report to Plaintiff's post to address a malfunction with her radio, despite being instructed to do so.

23. Plaintiff complained repeatedly to Ms. Whitaker in human resources about Richardson's conduct. Although Ms. Whitaker claimed she would "talk to Richardson," nothing was done to address Richardson's conduct.

24. Instead, the harassment escalated further.

25. One day, Plaintiff felt ill at work. She told co-workers she was feeling lightheaded. Plaintiff went to a women's bathroom and, in an effort to revive herself, unbuttoned the top of her shirt and began splashing water on her face and neck. Richardson followed Plaintiff into the bathroom and, under the guise of "helping" her to re-button her shirt, fondled her breasts. Just as Richardson was groping Plaintiff, a Port Authority police officer who apparently had seen Richardson enter the bathroom came to the doorway and told Richardson he could not be in the women's bathroom. Richardson left.

26. Plaintiff reported this incident to Ms. Whitaker in human resources. However, no effective discipline resulted.

27. Because Plaintiff's complaints to human resources were not kept confidential, she became the subject of intense gossip among Allied employees at the World Trade Center. Workers called her a "ghetto black bitch" and a "ho" and made other degrading, racist, and sexist comments about Plaintiff.

28. Upon information and belief, Richardson was not disciplined for sexually assaulting Plaintiff in a women's bathroom at work.

29. After multiple unsuccessful attempts, Plaintiff knew that complaining to human resources would not help her escape the campaign of sexual harassment against her and would only make things worse. As a result, she resolved simply to avoid Richardson as much as possible and minimize her contact with him.

30. Undeterred, Richardson continued to seek Plaintiff out and harass her. On at least one occasion, Richardson came to Plaintiff's post for no work-related reason and then rubbed his groin against her body on the pretext of sliding past her to enter the small security booth.

31. Plaintiff told Richardson that she would report his conduct and that security camera footage would corroborate her claims. Having anticipated this response, Richardson informed her, in sum and substance: "There are no cameras at this post."

32. Even as Plaintiff attempted to avoid Richardson, he found ways to catch her alone at work and harass her. On at least one occasion, when Plaintiff asked a female co-worker to come to her post to bear witness to Richardson's conduct, Richardson reprimanded the co-worker.

33. Richardson told Plaintiff that her problems at work were the result of not "listening to" him when he told her whom to socialize with. Richardson told Plaintiff that he could have gotten her promoted, and that she had harmed her prospects at Allied by not listening to him.

34. Plaintiff asked to be transferred so that she would not have to work with Richardson anymore, but Allied's human resources workers ignored or dismissed her requests. Plaintiff was also told she would be risking her pay if she pushed for a transfer.

***Plaintiff's Pretextual Termination***

35. On September 5, 2017, Plaintiff was posted at Gate 3D at the World Trade Center site.

36. LTS Richardson approached Plaintiff's post that afternoon. As he often did, Richardson slid into the security booth where Plaintiff was working, rubbing his body against Plaintiff as he did so.

37. Around the time Richardson came to her post, Plaintiff was scheduled for a meal break. In preparation for her break, Plaintiff began to remove her hat and boots. Richardson responded by telling her she was not permitted to remove any part of her uniform while still physically at her post.

38. In response to Richardson's statement, Plaintiff immediately placed all of her gear back on. In her full uniform, she then walked off the site for her break. Only once she was off the site did Plaintiff then once again remove her boots.

39. After this incident, Richardson—the same supervisor about whom Plaintiff had made sexual harassment complaints to human resources with no effect—wrote up a disciplinary statement to terminate Plaintiff from her job. Richardson falsely claimed that Plaintiff had improperly removed parts of her required uniform while still on duty.

40. While Richardson was, upon information and belief, never disciplined for sexually harassing Plaintiff for months on end, Plaintiff was fired because she allegedly removed her work boots one time in the wrong location. This was an obvious pretext for the true reason Plaintiff was fired: in retaliation for her repeated attempts to blow the whistle on a culture of sexual harassment and impunity at Allied.

***Plaintiff's Damages***

41. Plaintiff suffered several emotional distress as a result of the harassment she endured at Allied. The harassment drove her into a deep depression.

42. Plaintiff was humiliated, and her reputation was irreparably damaged.

43. Plaintiff's retaliatory and pretextual termination resulted in months of unemployment and considerable economic damages.

**FIRST CLAIM FOR RELIEF**
**N.Y.C. Admin. Code § 8-107(1) – Gender Discrimination, Sexual Harassment, and Hostile Work Environment in Violation of the New York City Human Rights Law (Against All Defendants)**

44. Defendants discriminated against Plaintiff on the basis of her gender, and/or sexually harassed Plaintiff, and/or caused Plaintiff to experience a hostile work environment in violation of the New York City Human Rights Law by treating Plaintiff less favorably on account of her gender, and/or making harassing or discriminatory comments to Plaintiff based on her gender, and/or by sexually harassing and assaulting Plaintiff.

45. Defendants knew of the general discrimination and sexual harassment perpetrated against Plaintiff, or at a minimum, should have known about the harassment

46. The sexual harassment perpetrated against Plaintiff by Defendants affected the terms, conditions, and privileges of her employment.

47. As a result of Defendants' gender discrimination and sexual harassment of Plaintiff in violation of the New York City Human Rights Law, Plaintiff was denied employment opportunities providing substantial compensation and benefits, entitling her to injunctive and equitable monetary relief. She also suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life due to Defendants' actions, entitling her to compensatory damages.

48. Defendants have acted with malice or deliberate indifference to the rights of Plaintiff, thereby entitling her to an award of punitive damages.

49. Under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-120, Plaintiff is entitled to recover reasonable attorneys' fees and costs of this action.

**SECOND CLAIM FOR RELIEF**
**N.Y.C. Admin. Code § 8-107(1) – Retaliation in Violation of the New York City Human Rights Law (Against All Defendants)**

50. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

51. Plaintiff engaged in protected activity by complaining about the sexual harassment and gender discrimination to which Defendants subjected her, and by seeking to be protected against those same discriminatory acts.

52. Defendants knew that Plaintiff had engaged in protected activity.

53. Defendants subjected Plaintiff to adverse employment actions, including by giving her less desirable work assignments, writing her up for pretextual reasons, terminating her, and subjecting her to a hostile work environment.

54. Defendants' adverse employment actions were a direct and proximate result of Plaintiff's protected regarding Defendants' discriminatory conduct.

55. As a result of the illegal conduct perpetrated by Defendants, Plaintiff has suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life, as well as lost wages and work opportunities, entitling her to compensatory damages.

56. Defendants have acted with malice or deliberate indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

57. Under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-120, Plaintiff is entitled to recover reasonable attorneys' fees and costs of this action.

58. Pursuant to N.Y.C. Admin. Code § 8-502(c), Plaintiff is providing the New York City Human Rights Commission with notice of her claims.

**THIRD CLAIM FOR RELIEF**
**N.Y. Exec. Law § 296 – Gender Discrimination, Sexual Harassment, and Hostile Work Environment in Violation of the New York State Human Rights Law (Against All Defendants)**

59. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

60. Defendants discriminated against Plaintiff on the basis of her gender by treating her less favorably on the basis of her gender, and/or sexually harassing Plaintiff, and/or subjecting Plaintiff to a hostile work environment in violation of the New York State Human Rights Law.

61. Defendants knew of the gender discrimination and/or sexual harassment perpetrated against Plaintiff, or at a minimum, should have known about the harassment.

62. The sexual harassment perpetrated against Plaintiff by Defendants affected the terms, conditions, and privileges of her employment.

63. As a result of Defendants' discrimination in violation of the New York State Human Rights Law, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, entitling her to injunctive and equitable monetary relief. She has also suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life due to Defendants' actions, entitling her to compensatory damages.

64. Defendants have acted with malice or deliberate indifference to the rights of Plaintiff, thereby entitling her to an award of punitive damages.

65. Under the New York State Human Rights Law, N.Y. Exec. Law § 297.10, Plaintiffs are entitled to recover reasonable attorneys' fees and costs of this action.

**FOURTH CLAIM FOR RELIEF**
**N.Y. Exec. Law § 296 – Retaliation in Violation of the New York State Human Rights Law**
**(Against All Defendants)**

66. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

67. Plaintiff engaged in protected activity by complaining about the sexual harassment and gender discrimination to which Defendants subjected her, and by seeking to be protected against those same discriminatory acts.

68. Defendants knew that Plaintiff had engaged in protected activity.

69. Defendants subjected Plaintiff to adverse employment actions, including by giving her less desirable work assignments, writing her up for pretextual reasons, terminating her, and subjecting her to a hostile work environment.

70. Defendants' adverse employment actions were a direct and proximate result of Plaintiff's protected complaints.

71. As a result of the illegal conduct perpetrated by Defendants, Plaintiff has suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life, as well as lost wages and work opportunities, entitling her to compensatory damages.

72. In their retaliatory acts in violation of the New York State Human Rights Law, Defendants have acted with malice or deliberate indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

73. Under the New York State Human Rights Law, N.Y. Exec. Law § 297.10, Plaintiff is entitled to recover reasonable attorneys' fees and costs of this action.

**FIFTH CLAIM FOR RELIEF**
**Sex Discrimination in Violation of Title VII**
**Of the Civil Rights Act of 1964**
**42 U.S.C.A. § 2000e–2**
**(Against Allied)**

74. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

75. Allied discriminated against Plaintiff on the basis of her sex by treating her less favorably on the basis of her sex, and/or sexually harassing Plaintiff, and/or subjecting Plaintiff to a hostile work environment.

76. Allied knew of the sex discrimination and/or sexual harassment perpetrated against Plaintiff, or at a minimum, should have known about the harassment.

77. The sexual harassment perpetrated against Plaintiff affected the terms, conditions, and privileges of her employment.

78. As a result of the sex discrimination hereinbefore described, Plaintiff has been denied employment opportunities providing substantial compensation and benefits and has suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life.

79. Allied has acted with malice or deliberate indifference to the rights of Plaintiff, thereby entitling her to an award of punitive damages.

80. On or about November 14, 2017, Plaintiff filed a timely Charge of Discrimination with the New York District Office of the Equal Employment Opportunity Commission ("EEOC").

81. On or about December 11, 2017, Plaintiff received a Notice of Right to Sue from the EEOC.

**SIXTH CLAIM FOR RELIEF**
**Retaliation in Violation of Title VII**
**Of the Civil Rights Act of 1964**
**42 U.S.C.A. § 2000e–3(a)**
**(Against Allied)**

82. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

83. Defendant Allied retaliated against Plaintiff in violation of the Civil Rights Act of 1964.

84. Allied retaliated against Plaintiff in response to her complaints that she reasonably believed she was subjected to sexual harassment.

85. Plaintiff engaged in protected activity by complaining about the sexual harassment and gender discrimination to which Defendants subjected her, and by seeking to be protected against those same discriminatory acts.

86. Allied knew that Plaintiff had engaged in protected activity.

87. Allied subjected Plaintiff to adverse employment actions, including by giving her less desirable work assignments, writing her up for pretextual reasons, terminating her, and subjecting her to a hostile work environment.

88. Allied otherwise caused Plaintiff injury in response to her protected activity.

89. Allied's adverse actions were a direct and proximate result of Plaintiff's protected complaints.

90. On or about November 14, 2017, Plaintiff filed a timely Charge of Discrimination with the New York District Office of the Equal Employment Opportunity Commission ("EEOC").

91. On or about December 11, 2017, Plaintiff received a Notice of Right to Sue from the EEOC.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

a) Awarding compensatory damages to Plaintiff;

b) Awarding punitive damages to Plaintiff;

c) Declaring that Defendants have violated Plaintiff's rights under the New York City Human Rights Law and the New York State Human Rights Law;

d) Declaring that Allied has violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964;

e) Awarding Plaintiff reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action;

f) Awarding injunctive relief appropriate to remedy the unlawful conduct and conditions described herein; and

g) Granting Plaintiff all such other relief as may be just and proper

Dated: March 8, 2018
New York, New York

Respectfully submitted,
EMERY CELLI BRINCKERHOFF
& ABADY LLP

By: /s/ David A. Lebowitz

Elizabeth Saylor
David A. Lebowitz
Alanna Kaufman

600 Fifth Avenue, 10th Floor
New York, New York 10020
Telephone: 212.763.5000
Facsimile: 212.763.5001

*Attorneys for Plaintiff*